**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ABNER WILLIAMS,**

             **Plaintiff,**                                  **Case No.:**

**v.**

**RIPA & ASSOCIATES, L.L.C. and**
**FLORIDA ASPHALT CONTRACTORS,**
**L.L.C.,**

             **Defendants.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ABNER WILLIAMS, by and through her undersigned counsel and sues the Defendants, RIPA & ASSOCIATES, L.L.C. ("RIPA") and FLORIDA ASPHALT CONTRACTORS, L.L.C. ("FAC") and states as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367 and 1441(b).

2.      Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3.      Plaintiff, ABNER WILLIAMS, is a resident of Pasco County, Florida.

4.      Defendant, RIPA, is a Florida Limited Liability Corporation authorized and doing business in this Judicial District.  At all times material, Defendant employed Plaintiff.

At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and 42 U.S.C. §1981.

5.      Defendant, FAC, is a Florida Limited Liability Corporation authorized and doing business in this Judicial District.  At all times material, Defendant employed Plaintiff. At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and 42 U.S.C. §1981.

6.      Defendants are a single employer/integrated enterprise and/or joint employers. Defendants hold themselves out to the public as "sister" companies.

7.      At all times material, Plaintiff was an employee of Defendant within the meaning of the Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

8.      At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

9.      At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employers.

10.     Plaintiff has retained the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

11.     Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

12.     On November 4, 2019, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") as to Defendant FAC.

13.     On February 4, 2020, Plaintiff amended his Charge of Discrimination to include Defendant RIPA.

14.     On June 23, 2020, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination as to Defendant RIPA.  This Complaint has been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

15.     On June 23, 2020, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination as to Defendant FAC.  This Complaint has been filed within ninety (90) days of the issuance of the Dismissal and Notice of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

16.     Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charges.

## FACTUAL ALLEGATIONS

17.     Plaintiff is a Black/African-American male.

18.     On or about November 26, 2018, Plaintiff began his employment with Defendants.  Based on his pre-employment discussions with John Bramonte (Vice President), Plaintiff understood that he was starting in the position of Foreman.

19.     When Plaintiff met John Bramonte on the first day of work, Bramonte said: "geesh, you're a big one."  Bramonte then told Plaintiff to "grab a shovel" until Bramonte could figure out what team Plaintiff would be on.

20.     By the beginning of 2019, Plaintiff realized that he was going to be working for Defendant as a Screed Operator, not a Foreman.

21.     In or around February 2019, Plaintiff's supervisors and co-workers began making harassing race-based comments and jokes.  At first, Plaintiff tried to ignore the racially charged atmosphere and do his job, but the harassment and discrimination quickly escalated.

22.     Mike Schutt (Tack Truck Driver) was the individual that, at first, primarily made the inappropriate racist comments and jokes.  Schutt made these race-based comments on a daily basis.

23.     In or around early February 2019, Schutt approached Plaintiff and stated: "What do you call a woman when flies hang around her pussy?  A Black woman, get it?  Flies only hang around shit."

24.     On another occasion, Schutt stated to Plaintiff: "Hey, I was watching the news this morning and a scientist was wondering how to stop little Black girls from jumping in the bed . . . put Velcro on the ceiling!"  Schutt, laughing, continued: "How the hell will you get them down?  Tell the Mexican kids it's a pinata!"  Schutt continued laughing, while Plaintiff looked at him in disgust and walked away.

25.     In or around February 2019, after Schutt made the "joke" about Black women, Plaintiff lodged a complaint about the racial harassment and discrimination to John Bramonte and Celeste Bramonte (Administrative Coordinator).

26.     Nothing was done by John Bramonte or Celeste Bramonte to stop the racial harassment and discrimination.  Instead, John Bramonte laughed at Schutt's race-based jokes after Plaintiff complained and commented: "oh, Mike jokes around like that, he's a fool."

27.     Moreover, after Plaintiff made his complaint, John Bramonte told Plaintiff's crew, who then began calling Plaintiff a "snitch."

28.     After Plaintiff reported Schutt's behavior, Schutt again began telling a racist joke.  Plaintiff intervened, told Schutt to stop, that he already reported him to John Bramonte and would go above Bramonte if necessary.  At that point, Schutt called Bramonte over and stated: "I was telling Abner that you know I'm not a racist, I am more like Mario.  He is an Italian plumber who was made by the Japanese.  He speaks English, looks like a Mexican and jumps like a Nig . . ., I mean Black man, and grabs coins like a Jew."  Bramonte laughed hysterically.  Plaintiff responded: "Really, John?  You think that's funny?"  Bramonte responded by telling Plaintiff that he was "way too sensitive."

29.     On or about April 22, 2019, Chad Cole (Foreman) threw a shovel in Plaintiff's direction and said: "what the fuck are you doing?"

30.     In or around May 2019, John Bramonte bought lunch for Plaintiff's crew in which Plaintiff was the only Black employee.  Bramonte looked at Plaintiff and stated: "I can buy everyone lunch, but I know all you want is watermelon and fried chicken."  Plaintiff responded: "Seriously, John, are you making racial jokes now?"  Bramonte laughed and said: "nah, not me."

31.     On or about July 16, 2019, Plaintiff requested October 24-26, 2019 off for a short family vacation.  Celeste Bramonte approved Plaintiff's request and it was scheduled to be a paid vacation.

32.     In or around August 2019, Cole approached Plaintiff and stated: "Hey Abner, I'm not a racist, but I want to tell you a joke I heard. I have plenty of Black friends, now can I tell you a joke?"  Plaintiff stated: "I hope not a black joke."  Cole said that it was not, but was "funny as hell."  Cole proceeded: "A Black guy walks with a parrot on his shoulder at a fruit stand and asks the clerk the price of watermelons.  The clerk notices the parrot and says 'is it tamed?'  The parrot responds: 'in the jungle, there's a million of them.'"

33.     On October 4, 2019, Cole brought a whip (a vestige of American slavery) to the workplace.  Cole and Tim Boon (Superintendent) cracked the whip a few times in front of Plaintiff and then Cole asked Plaintiff what the whip meant to him.

34.     After intimidating Plaintiff with the symbol of racism, brutality and white supremacy, Cole placed the whip in Plaintiff's workspace.  While doing so, Cole laughed hysterically.

35.     On or about October 15, 2019, Plaintiff complained to John Bramonte about the whip.  Once again, Bramonte laughed at Plaintiff.

36.     Following Plaintiff's complaint, Cole began sending Plaintiff home early and taking Plaintiff off of the work schedule.

37.     For example, on or about October 15, 2019, Plaintiff received an emergency call from his wife.  After Plaintiff finished the phone call, Cole told Plaintiff to "get the fuck off my clock" and sent Plaintiff home.  Plaintiff contacted Defendants' Human Resources

department and was told to report to the office.  When Plaintiff arrived at the office Celeste Bramonte told Plaintiff that John Bramonte wanted to speak with him.  Plaintiff told John Bramonte that he felt that Cole was targeting him and harassing him.

38.     During the meeting, Plaintiff showed Bramonte the photographs of the whip that Cole used to harass, demean and intimidate Plaintiff.  Bramonte was already aware of the incident and Plaintiff asked why Cole was not terminated for his behavior.  Bramonte laughed and stated: "oh, he didn't mean anything by it."  Bramonte continued: "he says he was just cracking the whip at you guys, you know, how slave masters do."  Plaintiff told Bramonte that he was downplaying the situation, to which Bramonte replied that Plaintiff was being "too sensitive."  Plaintiff asked if there was anyone that he could talk to about the situation at work and Bramonte told him that there was "no one else to see" and that Bramonte would investigate.

39.     At the end of the meeting, John Bramonte asked Plaintiff if he would just show up to work and not talk speak to anyone.  Plaintiff responded: "God gave me a mouth to speak and that's why I am in the office reporting what occurred today."  Bramonte responded: "Oh, *you people* have a voice."  Ultimately, Bramonte sent Plaintiff home for the remainder of the day and told Plaintiff that he would be paid for the day.  However, when Plaintiff received his next paycheck, he was not paid for the time.

40.     On or about October 16, 2019, Plaintiff was reassigned to a new crew.

41.     On or about October 22, 2019, Plaintiff overheard Josh George (Forman) and crew members discussing Plaintiff's October 15, 2019 complaints and conversation with John Bramonte, including the whip that Cole used to harass and intimidate Plaintiff.  Defendants'

employees continued to refer to Plaintiff as "snitch" and "job snitch."   For example, George stated: "Be careful with Abner, he is coming for all of us."

42.     On or about October 23, 2019, William Amos Purcell, Jr. (Machine Operator) shoveled hot asphalt and sand toward Plaintiff.

43.     Plaintiff took his approved family vacation from October 24 to October 26, 2019.

44.     While Plaintiff was on vacation, George sent Plaintiff a text message instructing Plaintiff to report to the office on Monday, October 28, 2019 to meet with John Bramonte.

45.     On October 28, 2019, Plaintiff met with John Bramonte to lodge another complaint about the racial harassment and discrimination.   Bramonte threatened to terminate Plaintiff's employment because of the hot asphalt situation with Amos, Jr. on October 23, 2019.   Bramonte said: "I should fire you, Mr. Williams."   Plaintiff was shocked and asked why he was being threatened with his job when he was the person who reported it.   Plaintiff also stated to Bramonte that he had been complaining to Bramonte for months about the racial harassment and discrimination with no resolution.   Bramonte then stated: "Look how big you are, I can't have a guy your size going after my employees."   Plaintiff responded: "Isn't that a discriminatory statement?"   Again, Bramonte referred to Plaintiff as "you people."   Ultimately, Bramonte told Plaintiff to report to work the next day and he would find something for Plaintiff to do.

46.     On or about October 30, 2019, Celeste Bramonte informed Plaintiff that he would not be compensated for his three vacation days because Plaintiff did not have any PTO available and that Plaintiff should have checked the ADP system and he would have known.

Plaintiff reminded Bramonte that the ADP system did not exist until a few weeks prior and that she approved his paid leave in writing via text message four months prior.

47.     Shortly after Plaintiff raised the pay issue with Celeste Bramonte, he was told to go to Quest Diagnostics for a random drug test/hair sample.  Plaintiff was the only member of his crew sent to Quest Diagnostics for testing.

48.     On November 4, 2019, Plaintiff arrived at work driving his wife's vehicle.  Josh George and Kevin Woodward (Head Superintendent) were together and Woodward stated: "I don't know why you went and got that car.  You might as well take it back."

49.     On November 4, 2019, Plaintiff filed his Charge of Discrimination with the EEOC and FCHR.

50.     On November 7, 2019, Plaintiff emailed a copy of the Charge of Discrimination to John Bramonte.

51.     Following the filing of Plaintiff's Charge of Discrimination, Defendants demoted Plaintiff from the Screed Operator position to a general laborer.

52.     During the work week of November 4, 2019 to November 10, 2019, Plaintiff worked 45.4 hours, but was only compensated by Defendants for 38.2 hours.

53.     On December 10, 2019, as a result of the ongoing harassment, discrimination, and retaliation, Plaintiff resigned from his position with Defendants.

**COUNT I**
**42 U.S.C. §1981 DISCRIMINATION**

54.     Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

55.     Plaintiff, a Black/African-American male, is a member of a protected class.

56.     By the conduct described above, Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of his race by:

      (a)     demoting Plaintiff;

      (b)     denying Plaintiff paid vacation;

      (c)     sending Plaintiff home without pay;

      (d)     requiring Plaintiff to take a drug test;

      (e)     refusing to compensate Plaintiff for all hours worked; and

      (f)     constructively discharging Plaintiff's employment.

57.     Defendants' adverse employment acts toward Plaintiff were motivated by race-based considerations.

58.     Defendants' unlawful and discriminatory employment practices toward Plaintiff were intentional.

59.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

60.     Defendants knew or should have known of the discrimination.

61.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

      a.     Back pay and benefits;

      b.     Interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages for emotional pain and suffering,

e.      Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief;

h.      For any other relief this Court deems just and equitable.

**COUNT II**
**TITLE VII – RACE DISCRIMINATION**

62.      Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

63.      Plaintiff, a Black/African-American male, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII").

64.      By the conduct described above, Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of her race by:

(a)      demoting Plaintiff;

(b)      denying Plaintiff paid vacation;

(c)      sending Plaintiff home without pay;

(d)      requiring Plaintiff to take a drug test;

(e)      refusing to compensate Plaintiff for all hours worked; and

(f)      constructively discharging Plaintiff's employment.

65.      Defendants' adverse employment acts toward Plaintiff were motivated by race-based considerations.

66.      Defendants' unlawful and discriminatory employment practices toward Plaintiff were intentional.

67.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

68.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

      a.     Back pay and benefits;

      b.     Interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages for emotional pain and suffering,

      e.     Punitive damages;

      f.     Attorneys' fees and costs;

      g.     Injunctive relief;

      h.     For any other relief this Court deems just and equitable.

## COUNT III
## FLORIDA CIVIL RIGHTS ACT – RACE DISCRIMINATION

69.     Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

70.     Plaintiff, a Black/African-American male, is a member of a protected class under Florida Civil Rights Act.

71.     By the conduct described above, Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of her race by:

      (a)     demoting Plaintiff;

      (b)     denying Plaintiff paid vacation;

      (c)     sending Plaintiff home without pay;

      (d)     requiring Plaintiff to take a drug test;

      (e)     refusing to compensate Plaintiff for all hours worked; and

      (f)     constructively discharging Plaintiff's employment.

72.    Defendants' adverse employment acts toward Plaintiff were motivated by race-based considerations.

73.    Defendants' unlawful and discriminatory employment practices toward Plaintiff were intentional.

74.    Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

75.    As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

      a.     Back pay and benefits;

      b.     Interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages for emotional pain and suffering,

      e.     Punitive damages;

      f.     Attorneys' fees and costs;

      g.     Injunctive relief;

      h.     For any other relief this Court deems just and equitable.

**COUNT IV**
**42 U.S.C. §1981—HARASSMENT**

76.     Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

77.     Plaintiff, a Black/African-American male, is a member of a protected class under 42 U.S.C. §1981.

78.     The aforementioned actions by Plaintiff's supervisors and co-workers constitute unwelcome race harassment.

79.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

80.     Defendants knew or should have known of the harassment of Plaintiff.

81.     The aforementioned actions created a hostile environment and constitute discrimination on the basis of race, in violation of 42 U.S.C. §1981.

82.     The race harassment and conduct of Defendants' managers and employees created a hostile work environment which interfered with Plaintiff's ability to perform his job.

83.     Defendants' actions were intentional and encouraged an environment where degradation based on race was common and tolerated.

84.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

85.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

a.      Back pay and benefits;

    b.      Prejudgment interest on back pay and benefits;

    c.      Front pay and benefits;

    d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.      Punitive damages;

    f.      Attorneys' fees and costs;

    g.      Injunctive relief; and

    h.      For any other relief this Court deems just and equitable.

**COUNT V**
**TITLE VII—RACE HARASSMENT**

86.    Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

87.    Plaintiff, a Black/African-American male, is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII").

88.    The aforementioned actions by Plaintiff's supervisors and co-workers constitute unwelcome race harassment.

89.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

90.    Defendants knew or should have known of the harassment of Plaintiff.

91.    The aforementioned actions created a hostile environment and constitute discrimination on the basis of race in violation of Title VII.

92.    The racial harassment and conduct of Defendants' managers and employees created a hostile work environment which interfered with Plaintiff's ability to perform his job.

93.     Defendants' actions were intentional and encouraged an environment where degradation based on race was common and tolerated.

94.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

95.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Attorneys' fees and costs;

    f.    Injunctive relief; and

    g.    For any other relief this Court deems just and equitable.

**COUNT VI**
**FLORIDA CIVIL RIGHTS ACT—RACE HARASSMENT**

96.     Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

97.     Plaintiff, a Black/African-American male, is a member of a protected class under the Florida Civil Rights Act (FCRA), Chapter 760, *Florida Statutes*.

98.     The aforementioned actions by Plaintiff's supervisors and co-workers constitute unwelcome race harassment.

99.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment.

100.    Defendants knew or should have known of the harassment of Plaintiff.

101.    The aforementioned actions created a hostile environment and constitute discrimination on the basis of race in violation of the FCRA.

102.    The racial harassment and conduct of Defendants' managers and employees created a hostile environment which interfered with Plaintiff's ability to perform his job.

103.    Defendants' actions were intentional and encouraged an environment where degradation based on race was common and tolerated.

104.    Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

105.    As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

    a.      Back pay and benefits;

    b.      Prejudgment interest on back pay and benefits;

    c.      Front pay and benefits;

    d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.      Attorneys' fees and costs;

    f.      Injunctive relief; and

    g.       For any other relief this Court deems just and equitable.

## COUNT VII
## 42 U.S.C. §1981 – RETALIATION

106. Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

107. Plaintiff suffered adverse employment actions for engaging in protected activity under the 42 U.S.C. §1981. Specifically, Plaintiff made good-faith, reasonable complaints of discrimination (both internally and through the EEOC) based on his race and was

        (a)    harassed and intimidated;

        (b)    demoted;

        (c)    denied paid vacation;

        (d)    sent home without pay;

        (e)    required to take a drug test;

        (f)    refused compensation for all hours worked; and

        (g)    constructively discharged.

108. The aforementioned actions by Defendants constitute retaliation by Defendants in violation of 42 U.S.C. §1981.

109. Defendants' unlawful and retaliatory employment practices toward Plaintiff were intentional.

110. Defendants' unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

111. As a result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

a.      Back pay and benefits;

b.      Prejudgment interest on back pay and benefits;

c.      Front pay and benefits;

d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.      Punitive damages;

f.      Attorneys' fees and costs;

g.      Injunctive relief; and

h.      For any other relief this Court deems just and equitable.

**COUNT XVIII**
**TITLE VII – RETALIATION**

112.    Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

113.    Plaintiff engaged in protected activity by opposing an employment practices made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII"). Specifically, Plaintiff opposed racial harassment, racial discrimination, and retaliation by making good-faith complaints to Defendants, both internally and through the EEOC.

114.    In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when he was:

(a)     harassed and intimidated;

(b)     demoted;

(c)     denied paid vacation;

(d)     sent home without pay;

    (e)     required to take a drug test;

    (f)     refused compensation for all hours worked; and

    (g)     constructively discharged.

115.    Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendants is causally connected to his opposition and resistance of racial harassment, race discrimination, and retaliation.

116.    The aforementioned actions by Defendants constitute retaliation by Defendants in violation of Title VII of the Civil Rights Act of 1964.

117.    Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

118.    As a result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

    a.     Back pay and benefits;

    b.     Prejudgment interest on back pay and benefits;

    c.     Front pay and benefits;

    d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.     Punitive damages;

    f.     Attorneys' fees and costs;

    g.     Injunctive relief; and

    h.     For any other relief this Court deems just and equitable.

## COUNT VII
## <u>FLORIDA CIVIL RIGHTS ACT—RETALIATION</u>

119.    Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

120.    Plaintiff engaged in protected activity by opposing an employment practice made unlawful by the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"). Specifically, Plaintiff opposed racial harassment, racial discrimination, and retaliation by making good-faith complaints to Defendants, both internally and through the EEOC.

121.    In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions when he was:

        (a)    harassed and intimidated;

        (b)    demoted;

        (c)    denied paid vacation;

        (d)    sent home without pay;

        (e)    required to take a drug test;

        (f)    refused compensation for all hours worked; and

        (g)    constructively discharged.

122.    Stated differently, the adverse employment actions suffered by Plaintiff at the hands of Defendants is causally connected to his opposition and resistance of racial harassment, race discrimination, and retaliation.

123.    The aforementioned actions by Defendants constitute retaliation by Defendants in violation of the Florida Civil Rights Act.

124.    Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

125.    As a result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.      Punitive damages;

      f.      Attorneys' fees and costs;

      g.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT VIII
## FAIR LABOR STANDARDS ACT (UNPAID OVERTIME)

126.    Plaintiff, ABNER WILLIAMS, re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-three (53).

127.    Defendants are subject to the requirements of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 216(b).

128.    Defendants are enterprises engaged in commerce as defined by 29 U.S.C. § 203(s)(l)(A) in that they (a) have employees engaged in commerce or have employees handling, selling, or otherwise working on goods or materials that have been moved in or

produced for commerce, and (b) have an annual gross volume of sales made or business done that is not less than $500,000.00.

129.     Plaintiff is covered as an individual under the FLSA because Plaintiff was engaged in interstate commerce as part of his job with Defendants. 29 U.S.C. §207(a)(1).

130.     Throughout his employment with Defendants, Plaintiff worked in excess of forty (40) hours per week, for which he was not  compensated at the overtime rate.

131.     The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees, such as Plaintiff, at a rate of not less than 1 ½ times their regular rate of pay for all work performed in excess of forty (40) hours in a work week.

132.     Plaintiff is entitled to be paid overtime compensation for all overtime hours worked for Defendants.

133.     Defendants' failure to pay Plaintiff overtime  at a rate not less than 1 ½ times the regular rate of pay for work performed in excess of forty (40) hours in a work week, violates the FLSA, 29 U.S.C. §§201 *et seq.,* including 29 U.S.C. § 207.

134.     Defendants knew or had reason to know that Plaintiff performed work in excess of forty (40) hours per work week.

135.     Defendants' violations of the FLSA were knowing, willful, and in reckless disregard of the rights of Plaintiff.

136.     As a direct result of Defendants' violations of the FLSA, Plaintiff suffered damages by being denied overtime wages in accordance  with § 207 and § 216(b) of the FLSA and has incurred reasonable attorneys' fees and costs.

137.   As a result of Defendants' violations of the FLSA, Plaintiff is entitled liquidated damages.

138.   Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor against Defendants, including, but not limited to:

a.   Awarding Plaintiff overtime compensation in the amount due to him for the time worked in excess of forty (40) hours per work week as allowable under the FLSA statute of limitations period;

b.   Awarding Plaintiff liquidated damages in an amount equal to the overtime award;

c.   Awarding prejudgment interest;

d.   Awarding reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

e.   Determining that the FLSA was violated and an adjudication on the merits of the case;

f.   Ordering any other further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

139.   Plaintiff, ABNER WILLIAMS, demands a trial by jury on all issues so triable.

**DATED** this 25th day of August 2020.

**FLORIN GRAY BOUZAS OWENS, LLC**

*/s/ Gregory A. Owens*_____
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**WOLFGANG M. FLORIN, ESQUIRE**
Florida Bar No.: 907804
wolfgang@fgbolaw.com

16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*